UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JUDY THOMAS,<br><br>        Plaintiff,<br><br>-against-<br><br>JONES DAY,<br><br>        Defendant. | Case No.: 21-cv-10245<br><br>**ANSWER** |

Defendant Jones Day ("Jones Day" or the "Firm"), by and through its attorneys, Jones Day, hereby answers the allegations set forth in the complaint ("Complaint") of Plaintiff Judy Thomas ("Plaintiff") as follows:

Plaintiff alleges race, national origin, gender, and age discrimination, including discriminatory termination, and retaliation under the Massachusetts General Laws Chapter 151B § 1, *et. seq*.  Jones Day denies all allegations of discriminatory and retaliatory treatment.  During Plaintiff's tenure at the Firm, Plaintiff had job performance issues, including inefficiency and unauthorized overtime for which she was counseled.  Ultimately, on February 1, 2018, Plaintiff repeatedly admitted to lying regarding a work-related incident.  Consistent with Firm policy, Jones Day terminated Plaintiff's employment for this breach of trust.

## **PARTIES**

1. Jones Day denies knowledge or information sufficient to form a belief as to Plaintiff's residence, and therefore denies the allegations in paragraph 1 of the Complaint.

2. Jones Day denies the allegations in paragraph 2 of the Complaint, except admits that it has an office located at 100 High Street, Boston, MA, 02110.  Answering further, Jones Day avers that is an Ohio general partnership.

## **FACTS**

3.     Jones Day denies the allegations in paragraph 3 of the Complaint. Answering further, Jones Day avers that Plaintiff began her employment at Jones Day on July 18, 2016.

4.     Jones Day admits paragraph 4 of the Complaint.

5.     Jones Day admits paragraph 5 of the Complaint.

6.     Jones Day denies the allegations in paragraph 6 of the Complaint. Answering further, Jones Day avers that Plaintiff provided support to attorneys in Jones Day's Real Estate practice group who focused on tax credit transactions work.

7.     Jones Day denies the allegations in paragraph 7 of the Complaint. Answering further, Jones Day avers that, as a paralegal, Plaintiff reported directly to then-Boston Office Manager, Megan Pluviose. Douglas Banghart, a Boston-based partner in Jones Day's Real Estate practice, occasionally oversaw Plaintiff's work pursuant to his managerial responsibilities in the Real Estate practice.

8.     Jones Day denies knowledge or information sufficient to form a belief as to specifically which attorneys in its Real Estate practice Plaintiff supported, and therefore denies the allegations in paragraph 8 of the Complaint. Answering further, Jones Day avers that, pursuant to completing paralegal work on various tax credit transactions, Plaintiff provided support to different Real Estate attorneys, both in and outside of the Boston office.

9.     Jones Day denies the allegations in paragraph 9 of the Complaint. Answering further, Jones Day avers that Plaintiff's job performance was middling. In particular, Plaintiff did not complete tasks efficiently, told attorneys she had completed assignments when she had not done so, failed to apprise attorneys of the status of outstanding projects, struggled to grasp concepts

involved in drafting loan documents, incurred substantially more overtime than was reasonable given the work she was doing, and required attorneys to prioritize tasks for her.

10.     Jones Day denies the allegations in paragraph 10 of the Complaint.

11.     Jones Day denies the allegations in paragraph 11 of the Complaint.

12.     Jones Day denies the allegations in paragraph 12 of the Complaint.  Answering further, Jones Day avers that Plaintiff's work was evaluated on standards applied consistently to those paralegals providing similar paralegal services.

13.     Jones Day denies the allegations in paragraph 13 of the Complaint.  Answering further, Jones Day avers that Plaintiff's work load was comparable to that of other paralegals supporting the Real Estate practice.  Indeed, to ensure an equitable distribution of work among the paralegals, the Real Estate group instituted a procedure whereby paralegals were required to submit a weekly summary of their assigned tasks and time estimates for completing the same. Plaintiff was resistant to complying with this procedure, and on multiple occasions had to be reminded to submit her weekly summaries.

14.     Jones Day denies the allegations in paragraph 14 of the Complaint.  Answering further, Jones Day avers that Mr. Banghart and Brian Hern, an associate in the Real Estate practice, did not demean, belittle, or berate Plaintiff or any other paralegals or support staff.

15.     Jones Day denies the allegations in paragraph 15 of the Complaint.  Answering further, Jones Day avers that, during Plaintiff's employment at Jones Day, it had a policy requiring all paralegals to obtain prior approval for all overtime work from attorneys.  Plaintiff had no more difficulty obtaining approval for necessary overtime than any of the other paralegals supporting the Real Estate practice.  Additionally, despite having a comparable workload to other paralegals

supporting the Real Estate practice, Plaintiff, due to her inefficiency in completing routine assignments, consistently worked unwarranted overtime.

16.     Jones Day denies the allegations in paragraph 16 of the Complaint.  Answering further, Jones Day avers that Mr. Hern and Brett Heyman, an associate in the Real Estate practice, did not create fictitious issues with Plaintiff's work or the work of any other paralegal or support staff person.

17.     Jones Day denies the allegations in paragraph 17 of the Complaint.

18.     Jones Day denies the allegations in paragraph 18 of the Complaint.  Answering further, Jones Day avers that attorneys in the Real Estate practice did not request that Plaintiff complete assignments within unreasonable deadlines.  Rather, Plaintiff consistently failed to complete routine assignments within the reasonable time frames in which other paralegals completed such work.

19.     Jones Day denies the allegations in paragraph 19 of the Complaint.  Answering further, Jones Day avers that Plaintiff never complained to Mr. Banghart that Mr. Hern was belittling her or treating her differently on the basis of her race, ethnicity, or age.

20.     Jones Day denies the allegations in paragraph 20 of the Complaint.

21.     Jones Day denies the allegations in paragraph 21 of the Complaint.  Answering further, Jones Day avers that Plaintiff's workload and assignments were comparable to that of other paralegals supporting the Real Estate practice, and that other paralegals typically completed such work during normal business hours.  Further, Ms. Pluviose and attorneys in the Real Estate practice consistently reminded Plaintiff that she was required to accurately record all of her hours worked, including all overtime hours.  Notably, throughout her employment, Plaintiff violated Jones Day's timekeeping policies such that Ms. Pluviose was required to counsel Plaintiff,

verbally and in writing, about compliance with the same. At no time was Ms. Thomas ever instructed that she should work overtime without billing her hours or to bill fewer hours than she actually worked.

22. Jones Day denies the allegations in paragraph 22 of the Complaint, except admits that partners in the Real Estate practice were responsible for approving Plaintiff's overtime work if they assigned such work to Plaintiff. Answering further, Jones Day avers that, throughout the duration of Plaintiff's employment, it maintained a policy requiring all paralegals to obtain prior approval for all overtime work from assigning attorneys.

23. Jones Day denies the allegations in paragraph 23 of the Complaint, except admits that associates in the Real Estate practice were responsible for approving Plaintiff's overtime work if they assigned such work to Plaintiff. Answering further, Jones Day avers that, throughout the duration of Plaintiff's employment, it maintained a policy requiring all paralegals to obtain prior approval for all overtime work from assigning attorneys.

24. Jones Day denies knowledge or information sufficient to form a belief as to whether Plaintiff accurately billed all of her overtime hours, and therefore denies this allegation in paragraph 24 of the Complaint. Jones Day additionally denies the remaining allegations in paragraph 24 of the Complaint. Answering further, Jones Day avers that, prior to submitting her timesheet on a weekly basis, Plaintiff certified that her timesheet completely and accurately reflected all of her hours worked. Moreover, Plaintiff billed significantly more overtime hours than other paralegals supporting the Real Estate practice despite Plaintiff having a comparable workload to the other paralegals. Further, neither Mr. Heyman nor any other attorney or staff person instructed Plaintiff not to bill her overtime hours or that Plaintiff should take work home without telling anyone. To the contrary, attorneys in the Real Estate practice and Ms. Pluviose

repeatedly reminded Plaintiff that she was required to accurately record all of her hours worked, including all overtime hours.

25. Jones Day denies the allegations in paragraph 25 of the Complaint.

26. Jones Day denies the allegations in paragraph 26 of the Complaint.

27. Jones Day denies the allegations in paragraph 27 of the Complaint.

28. Jones Day denies the allegations in paragraph 28 of the Complaint.

29. Jones Day denies the allegations in paragraph 29 of the Complaint.

30. Jones Day denies the allegations in paragraph 30 of the Complaint.

31. Jones Day denies the allegations in paragraph 31 of the Complaint, except admits that John Kelley, a Boston-based partner in the Real Estate practice, engaged in small talk with Plaintiff in which he inquired about conditions in Haiti in light of Haiti's ongoing humanitarian crises due to a 2010 earthquake.

32. Jones Day denies the allegations in paragraph 32 of the Complaint. Answering further, Jones Day avers that Plaintiff's workload was comparable to that of other paralegals supporting the Real Estate practice.

33. Jones Day denies the allegations in paragraph 33 of the Complaint. Answering further, Jones Day avers that Plaintiff did not complain to Ms. Pluviose about discrimination or differential treatment in July 2017.

34. Jones Day denies the allegations in paragraph 34 of the Complaint.

35. Jones Day denies the allegations in paragraph 35 of the Complaint.

36. Jones Day denies the allegations in paragraph 36 of the Complaint.

37. Jones Day denies the allegations in paragraph 37 of the Complaint. Answering further, Jones Day avers that Ms. Pluviose and/or Mr. Banghart met with Plaintiff on multiple occasions

in or about fall 2017 to counsel Plaintiff regarding Jones Day's timekeeping and overtime policies and coach her regarding workflow management.  During those meetings, Ms. Pluviose and Mr. Banghart specifically sought to understand the causes of Plaintiff's inefficient work and excessive overtime, and provide resources for Plaintiff to improve her skills, workflow management, and communication with assigning attorneys.  Ms. Pluviose and Mr. Banghart invested time in Plaintiff's development because they felt Plaintiff had potential and wanted to provide coaching in hope that Plaintiff would redress her performance deficiencies.

38.     Jones Day denies the allegations in paragraph 38 of the Complaint.  Answering further, Jones Day avers that Mr. Banghart resided in South Africa only briefly as a toddler.

39.      Jones Day denies the allegations in paragraph 39 of the Complaint.

40.     Jones Day denies the allegations in paragraph 40 of the Complaint, except admits that Plaintiff met or spoke with Ms. Pluviose or Mr. Banghart on multiple occasions in or about fall 2017 to address Plaintiff's non-compliance with Jones Day's timekeeping and overtime policies.

41.     Jones Day denies the allegations in paragraph 41 of the Complaint.  Answering further, Jones Day avers that Plaintiff never reported allegations of discrimination or differential treatment of any kind to Mr. Banghart, nor informed Mr. Banghart that she was reporting such allegations to Human Resources.

42.     Jones Day denies the allegations in paragraph 42 of the Complaint, except admits that, during a November 14, 2018 meeting, Ms. Pluviose and Mr. Banghart gave Plaintiff a written counseling report.  Answering further, Jones Day avers that the counseling report reprimanded Plaintiff for attempting to record her time in a manner that was inconsistent with Jones Day's timekeeping policy.  Specifically, Plaintiff worked overtime without obtaining the necessary prior approvals and, on her own initiative, began adjusting her start and stop times instead of

requesting overtime. Both practices violate Jones Day's timekeeping and overtime policies. Notably, on multiple occasions in November 2017, Ms. Pluviose had explained Jones Day's timekeeping and overtime policies to Plaintiff and counseled Plaintiff regarding her non-compliance with the same. Despite this counseling, Plaintiff continued to violate Jones Day's timekeeping policy, prompting the written counseling report.

43. Jones Day denies the allegations in paragraph 43 of the Complaint. Answering further, Jones Day avers that, on November 15, 2018, the day after Plaintiff received the written counseling report, Plaintiff sent Ms. Pluviose an e-mail stating that she was being treated differently because of her race. This was the first, and only, time that Ms. Thomas reported allegations of discrimination or differential treatment of any kind to Jones Day during her employment. Ms. Pluviose immediately escalated Plaintiff's complaint to Human Resources.

44. Jones Day admits that, on November 28, 2017, Human Resources contacted and interviewed Plaintiff regarding her allegations of discrimination and/or differential treatment.

45. Jones Day admits that allegations in paragraph 45 of the Complaint.

46. Jones Day denies the allegations in paragraph 46 of the Complaint. Answering further, Jones Day avers that Plaintiff was not subject to a hostile and/or intimidating work environment at any time during her employment.

47. Jones Day denies the allegations in paragraph 47 of the Complaint.

48. Jones Day denies that allegations in paragraph 48 of the Complaint, except admits that Plaintiff's vacation request was denied in part. Answering further, Jones Day avers that Plaintiff requested an extended vacation to coincide with the end of the calendar year, which is the Real Estate practice's annual busy deal closing season. Plaintiff and other paralegal supporting the Real Estate practice were well-familiar with the group's year-end deal closing period, and, as

such, the other paralegal supporting the Boston office's Real Estate group did not request any vacation for year-end. In particular, Plaintiff was providing paralegal support on a deal that was scheduled to close at year-end. Accordingly, Jones Day could not approve Plaintiff's entire vacation. In an effort to accommodate Plaintiff, Jones Day approved two of her vacation days, permitted her to work remotely, and provided Plaintiff with an exception to Jones Day's vacation policy enabling her to carry-over more than five unused 2017 vacation days to be used in 2018.

49.    Jones Day denies the allegations in paragraph 49 of the Complaint, except admits that Plaintiff met with Traci Lovitt, then-Partner-in-Charge of the Boston office, on January 18, 2018. Answering further, Jones Day avers that, during that meeting, Plaintiff expressed that she was upset about the counseling report because she felt like she had been accused of overtime theft, and that she was having difficulty managing her workflow. Plaintiff did not report allegations of discrimination or differential treatment of any kind. Indeed, during the meeting, Ms. Lovitt asked Plaintiff whether she was asserting discrimination because Ms. Lovitt would then need to involve Human Resources, and Plaintiff confirmed she was not raising such concerns. Ms. Lovitt explained that Plaintiff had been counseled for improperly recording her time in violation of Jones Day's timekeeping policy, and that there was no suggestion Plaintiff had billed time she had not worked.

50.    Jones Day denies the allegations in paragraph 50 of the Complaint.

51.    Jones Day denies knowledge or information sufficient to form a belief as to whether Plaintiff accurately recorded all of her hours worked and/or Plaintiff's rationale for billing or not billing her time, and therefore denies the allegations in paragraph 51 of the Complaint. Answering further, Jones Day avers that Plaintiff certified that her timesheets completely and accurately reflected her hours worked each time she submitted the same, and that Ms. Pluviose

and attorneys in the Real Estate practice repeatedly reminded Plaintiff to record all of her hours worked.

52.     Jones Day denies the allegations in paragraph 52 of the Complaint.  Answering further, Jones Day avers that Plaintiff certified that her timesheets completely and accurately reflected her hours worked each time she submitted the same.

53.     Jones Day denies the allegations in paragraph 53 of the Complaint.

54.     Jones Day denies the allegations in paragraph 54 of the Complaint.

55.     Jones Day denies the allegations in paragraph 55 of the Complaint, except admits that Plaintiff was terminated for lying.  Answering further, Jones Day avers that Plaintiff was terminated on February 2, 2018.

56.     Jones Day denies the allegations in paragraph 56 of the Complaint.  Answering further, Jones Day avers that, on the evening of January 31, 2018, Mr. Heyman informed Mr. Banghart that Plaintiff had repeatedly refused to provide him with a time estimate for the completion of a particular task.  The following day, February 1, 2018, Mr. Banghart and Mr. Heyman met with Plaintiff to discuss the prior evening's incident.  In response to Mr. Heyman's description, Plaintiff denied that she had refused to provide Mr. Heyman with a time estimate for the task completion and instead stated that she told Mr. Heyman she would leave at 6:00 PM.  When Mr. Banghart asked Plaintiff whether she thought her response to Mr. Heyman's request for a time estimate was appropriate, Plaintiff abruptly stated that she had lied.  Mr. Banghart then asked Plaintiff three times what she meant when she said she had lied, and Plaintiff affirmed that she had lied and that Mr. Heyman had accurately described their conversations.  Mr. Banghart took contemporaneous notes during, and, the next day drafted a memorandum memorializing, the meeting.  On February 2, 2018, Ms. Lovitt met with Plaintiff to inform her that Jones Day was

terminating Plaintiff's employment for engaging in dishonesty in violation of the Firm's foundational value of integrity. During that meeting, Ms. Lovitt inquired as to Ms. Thomas' lying during the February 1, 2018 meeting. In response, Ms. Thomas again admitted she had lied and provided no explanation for doing so.

57. Jones Day denies knowledge or information sufficient to form a belief as to whether Plaintiff experienced an emotional breakdown in November 2017 or at any other time, and therefore denies the allegations in paragraph 57 of the Complaint.

58. Jones Day admits that Plaintiff filed a charge with the Massachusetts Commission Against Discrimination ("MCAD") and that the MCAD issued a decision regarding the same. Jones Day denies knowledge or information sufficient to form as to whether Plaintiff has exhausted her administrative remedies with the MCAD, and therefore denies the allegations in paragraph 58 of the Complaint.

## FIRST CAUSE OF ACTION – NATIONAL ORIGIN DISCRIMINATION IN VIOLATION FO MASS. GEN. LAWS CHAPTER 151B § 1, ET. SEQ.

59. Jones Day submits that paragraph 59 is a legal conclusion as to which no response is necessary.

60. Jones Day denies knowledge or information sufficient to form a belief as to Plaintiff's national origin, except admits that Plaintiff stated to certain Jones Day personnel that she is from Haiti.

61. Jones Day denies the allegations in paragraph 61 of the Complaint.

62. Jones Day denies the allegations in paragraph 62 of the Complaint, except admits that Plaintiff was terminated.

63. Jones Day denies the allegations in paragraph 63 of the Complaint, and avers that Plaintiff is not entitled to the relief she seeks or any other relief.

**SECOND CAUSE OF ACTION –RACE DISCRIMINATION IN VIOLATION FO MASS. GEN. LAWS CHAPTER 151B § 1, ET. SEQ.**

64. Jones Day submits that paragraph 64 is a legal conclusion as to which no response is necessary.

65. Jones Day admits paragraph 65 of the Complaint.

66. Jones Day denies the allegations in paragraph 66 of the Complaint.

67. Jones Day denies the allegations in paragraph 67 of the Complaint, except admits that Plaintiff was terminated.

68. Jones Day denies the allegations in paragraph 68 of the Complaint, and avers that Plaintiff is not entitled to the relief she seeks or any other relief.

**THIRD CAUSE OF ACTION – SEX DISCRIMINATION IN VIOLATION FO MASS. GEN. LAWS CHAPTER 151B § 1, ET. SEQ.**

69. Jones Day submits that paragraph 69 is a legal conclusion as to which no response is necessary.

70. Jones Day admits paragraph 70 of the Complaint.

71. Jones Day denies the allegations in paragraph 71 of the Complaint.

72. Jones Day denies the allegations in paragraph 72 of the Complaint, except admits that Plaintiff was terminated.

73. Jones Day denies the allegations in paragraph 73 of the Complaint, and avers that Plaintiff is not entitled to the relief she seeks or any other relief.

**FOURTH CAUSE OF ACTION – AGE DISCRIMINATION IN VIOLATION FO MASS. GEN. LAWS CHAPTER 151B § 1, ET. SEQ.**

74. Jones Day submits that paragraph 74 is a legal conclusion as to which no response is necessary.

75. Jones Day admits paragraph 75 of the Complaint.

76. Jones Day denies the allegations in paragraph 76 of the Complaint.

77. Jones Day denies the allegations in paragraph 77 of the Complaint, except admits that Plaintiff was terminated.

78. Jones Day denies the allegations in paragraph 78 of the Complaint, and avers that Plaintiff is not entitled to the relief she seeks or any other relief.

**FIFTH CAUSE OF ACTION – RETALIATION IN VIOLATION FO MASS. GEN. LAWS CHAPTER 151B § 1, ET. SEQ.**

79. Jones Day submits that paragraph 79 is a legal conclusion as to which no response is necessary.

80. Jones Day denies the allegations in paragraph 80 of the Complaint.

81. Jones Day denies the allegations in paragraph 81 of the Complaint, except admits that Plaintiff reported allegations of race-based discrimination and/or differential treatment to Jones Day.

82. Jones Day denies the allegations in paragraph 82 of the Complaint.

83. Jones Day denies the allegations in paragraph 83 of the Complaint, and avers that Plaintiff is not entitled to the relief she seeks or any other relief.

**JURY DEMAND**

In response to the jury trial demand on page 20 of the Complaint, Jones Day states that whether Plaintiff's claims entitle her to trial by jury constitutes a legal determination that is not subject to admission or denial.

**DEFENSES**

Jones Day asserts the following affirmative and other defenses. Jones Day reserves the right to amend or supplement its answer and/or defenses as may be warranted by the information

developed through subsequent discovery. Nothing stated herein constitutes a concession as to whether Plaintiff or Jones Day bears the burden of proof on any issue.

### FIRST DEFENSE

The Complaint fails to state a claim upon which relief can be granted.

### SECOND DEFENSE

Plaintiff's claims are barred, in whole or in part, by the applicable statutes of limitations.

### THIRD DEFENSE

Jones Day had legitimate, non-discriminatory reasons for all decisions concerning Plaintiff's employment.

### FOURTH DEFENSE

Plaintiff's claims are barred, in whole or in part, by failing to demonstrate any entitlement to damages.

### FIFTH DEFENSE

Plaintiff has failed to mitigate her damages, if any.

### SIXTH DEFENSE

Any claims for punitive damages are barred, in part or in whole, because Jones Day did not engage in willful or intentional conduct, nor did it engage in any practice with malice or reckless indifference to the rights of Plaintiff.

### SEVENTH DEFENSE

Jones Day has and had in place internal anti-discrimination and harassment policies that sets forth the procedure to be followed if an employee believes he or she has been harassed, discriminated or retaliated against and Jones Day provided other opportunities to prevent or correct such conduct. To the extent Plaintiff failed to use such procedures, Plaintiff's claims are

barred.

## EIGHTH DEFENSE

Jones Day acted in good faith at all times relevant to this action and had reasonable grounds to believe that its acts and omissions, if any, were not a violation of any applicable law.

WHEREFORE, Jones Day respectfully requests that this Court dismiss the Complaint with prejudice and award Jones Day its costs and attorneys' fees.

Respectfully submitted,

JONES DAY,

Dated:  December 14, 2021
       Boston, Massachusetts

By its counsel,
/s/ *Terri L. Chase*
   Jones Day
   Terri L. Chase (BBO # 567791)
   600 Brickell Avenue, Suite 3300
   Miami, Florida 33131
   Telephone:  (305) 714-9722
   Facsimile:  (305) 714-9799
   tlchase@jonesday.com

   Jones Day
   Kate Wallace (BBO # 665503)
   100 High Street 21st Floor
   Boston, Massachusetts 02110
   Telephone:  (617) 449-6893
   Facsimile:  (617) 449-6999
   kwallace@jonesday.com

   Jones Day
   Ilana Yoffe (*pro hac vice*)
   250 Vesey Street
   New York, NY 10281
   Telephone:  (212) 326-3747
   Facsimile:  (212) 755-7306
   iyoffe@jonesday.com

*Attorneys for Defendant Jones Day*

**CERTIFICATE OF SERVICE**

    I hereby certify that on December 14, 2021, I electronically filed the foregoing document using the Court's CM/ECF system.

Dated: December 14, 2021
         New York, NY

By: /s/ *Ilana R. Yoffe*
    Ilana R. Yoffe